1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT

8               EASTERN DISTRICT OF CALIFORNIA

9

10   FEDERICO HERNANDEZ,                    CASE NO. 1:13-cv-01625-MJS (PC)

11           Plaintiff,                     **ORDER REGARDING DISCOVERY**

12       v.

13   M. HERNANDEZ, et al.,                  **TEN (10) DAY DEADLINE FOR
                                            DEFENDANTS' PRODUCTION OF**
14           Defendants.                    **DOCUMENTS**

15

16

17          Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil

18   rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against

19   Defendants Hernandez, Zambrano, Clark, Rodriguez, and Martin on Plaintiff's Eighth

20   Amendment excessive force claim. Trial is set for August 11, 2015. (ECF No. 86.)

21          On June 3, 2015, Plaintiff filed a motion requesting a telephonic discovery

22   dispute conference to address items contained in Defendants' supplemental privilege

23   log. (ECF No. 77.) The issues raised by Plaintiff were discussed during the pretrial

24   conference, and Defendants were ordered to provide the disputed documents to the

25   Court for *in camera* review. (ECF No. 92.) The Court received Defendants' documents

26   on June 25, 2015, reviewed them, and here addresses the privileges asserted against

27   their production.

28

1    **I.      PLAINTIFF'S REQUEST**

2         Plaintiff asks that documents listed in Defendants' privilege log be released to

3    him. Specifically, he asks that Defendants reveal statements concerning the following:

4    (1) whether CDCR policy was followed; (2) whether officials used excessive force; and

5    (3) whether CDCR officers were disciplined in connection with the incident.

6    **II.     LEGAL STANDARD**

7         **A.  Privilege Generally**

8         The Supreme Court has long noted that privileges are disfavored. Jaffee v.

9    Redmond, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the

10   burden to demonstrate that the privilege applies to the information in question." Tornay

11   v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly

12   construed" because they "impede full and free discovery of the truth." Eureka Fin. Corp.

13   v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is

14   worth protecting, a litigant must be prepared to expend some time to justify the assertion

15   of the privilege." Id.

16        In civil rights cases brought under section 1983, questions of privilege are

17   resolved by federal law. Kerr v. U.S. District Court for the Northern District of California,

18   511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from

19   statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly

20   v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).

21        **B.      Official Information Privilege**

22        Nevertheless, "[f]ederal common law recognizes a qualified privilege for official

23   information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing

24   Kerr, 511 F.2d at 198). The official information privilege ensures disclosure of

25   discoverable information without compromising the state's interest in protecting the

26   privacy of law enforcement officials and in ensuring the efficacy of its law enforcement

27   system. Kelly, 114 F.R.D. at 662-63.

28

1    "To determine whether the information sought is privileged, courts must weigh the

2    potential benefits of disclosure against the potential disadvantages. If the latter is

3    greater, the privilege bars discovery." Sanchez, 936 F.2d at 1033-34. "In the context of

4    civil rights suits against [corrections officials], this balancing approach should be

5    'moderately pre-weighted in favor of disclosure.'" Soto, 162 F.R.D. at 613 (quoting Kelly,

6    114 F.R.D. at 661).

7         The party invoking the privilege must at the outset make a "substantial threshold

8    showing" by way of a declaration or affidavit from a responsible official with personal

9    knowledge of the matters attested. Soto, 162 F.R.D. at 613. "The claiming official must

10   'have seen and considered the contents of the documents and himself have formed the

11   view that on grounds of public interest they ought not to be produced' and state with

12   specificity the rationale of the claimed privilege." Kerr, 511 F.2d at 198 (citation omitted).

13   The affidavit must include: (1) an affirmation that the agency generated or collected the

14   material in issue and has maintained its confidentiality; (2) a statement that the official

15   has personally reviewed the material in question; (3) a specific identification of the

16   governmental or privacy interests that would be threatened by disclosure of the material

17   to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully

18   crafted protective order would create a substantial risk of harm to significant

19   governmental or privacy interests, and (5) a projection of how much harm would be done

20   to the threatened interests if disclosure were made. Soto, 162 F.R.D. at 613. In addition,

21   "[t]he asserting party, as in any case where a privilege is claimed, must sufficiently

22   identify the documents so as to afford the requesting party an opportunity to challenge

23   the assertion of privilege." Miller v. Panucci, 141 F.R.D.292, 300 (C.D. Cal. 1992).

24        **C.    Self-Critical Analysis Privilege**

25        Though raised by Defendants, the Ninth Circuit has not recognized the "self-

26   critical analysis" privilege. See Union Pac. R.R. Co. v. Mower, 219 F.3d 1069, 1076 n. 7

27   (9th Cir. 2000), and citations therein.

28

1          **D.      Deliberative Process Privilege**

2          The deliberative process privilege is intended to protect the quality of agency

3    decisions by promoting frank and independent discussion among those responsible for

4    governmental decision-making. See, e.g., Fed. Trade Comm'n v. Warner Commc'ns,

5    Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). A litigant may obtain discovery of materials

6    protected by the privilege if the need for the materials outweighs the governmental

7    interest in keeping the decision-making process confidential. In deciding whether to

8    override the privilege and allow discovery, there are four factors to be considered: "(1)

9    the relevance of the evidence; (2) the availability of other evidence; (3) the government's

10   role in the litigation; and (4) the extent to which disclosure would hinder frank and

11   independent discussion regarding contemplated policies and decisions." Id.

12         However, the deliberative process privilege generally is not applicable in civil

13   rights cases against officers. Soto, 162 F.R.D. at 612. This privilege "should be invoked

14   only in the context of communications designed to directly contribute to the formulation

15   of important public policy." Id. It does not shield internal affairs investigations or records

16   of witness and officer statements. Id.

17   **III.    DISCUSSION**

18         Defendants' supplemental privilege log contains nine items. (ECF No. 57-1.)

19   Following an April 29, 2015 discovery dispute conference, the Court conducted an in

20   camera review of Items 2, 3, 8, and 9, and concluded that they contained no relevant

21   information. (ECF No. 71.) Accordingly, Defendants were not required to disclose these

22   items. The Court will not revisit that ruling. The remaining items on Defendants'

23   supplemental privilege log are discussed below.

24         **A.      Item No. 1**

25         Item No. 1 is a Correctional Lieutenant's April 9, 2013, "Report of Findings" to

26   Acting Facility Captain Nate Greene and Associate Warden Dave Fischer concerning

27   the incident at issue. It was generated in response to Plaintiff's staff complaint.

28
                                              4

1    Defendants claim privilege under Federal Rule of Evidence 501, the official information

2    privilege, and the critical self-analysis privilege. They state that CDCR has maintained

3    the document's confidentiality pursuant to state law. Staff complaints are "maintained

4    under lock and key with access allowed to only authorized personnel." The

5    investigations are not available to inmates under the California Code of Regulations,

6    and are available to staff only in limited circumstances.

7          Defendants state that maintaining the confidentiality of the investigations into

8    staff complaints encourages witnesses to make truthful statements. They further

9    contend that release of the information, even pursuant to a protective order, would

10   endanger institutional safety "as it would disclose the process and procedures used to

11   respond to inmate violence, and could jeopardize a correctional officer's authority

12   because another officer may be critical of their action," even if those actions comply

13   with regulations and the law. Disclosure could inform inmates of CDCR's investigatory

14   techniques and hamper future investigations. They contend this holds true even if the

15   documents are released pursuant to a protective order.

16        **B.     Item Nos. 4-7**

17         Item Nos. 4-7 were generated as part of the institution's own internal review

18   process, a process undertaken whenever force is used to ensure compliance with

19   CDCR policy.

20        Item No. 4 is a Memorandum concerning the incident, dated January 30, 2014,

21   and authored by Associate Director Connie Gibson. Defendants claim the same

22   privileges as with respect to Item No. 1.

23        Item No. 5 is a "Report of Findings," dated March 5, 2013. Defendants claim the

24   same privileges as with respect to Item Nos. 1 and 4.

25        Item No. 6 is a "Confidential Use of Force Critique Package" concerning the

26   incident. Defendants claim the self-critical analysis privilege, the official information

27   privilege, and the deliberative process privilege.

28

1    Item No. 7 is the "Institution Executive Review Committee Critique and

2  Qualitative Evaluation" concerning the incident. Defendants claim the self-critical

3  analysis privilege, the official information privilege, and the deliberative process

4  privilege.

5    Defendants claim the documents have the potential to jeopardize institutional

6  safety by disclosing investigatory techniques and corrective measures taken as a result

7  of such investigation. Inmates could use the information to sabotage staff attempts to

8  deal with disruptive inmate conduct and undermine investigations into such attempts.

9  Inmates could set staff up for disrespect or unwarranted discipline. Inmates could tailor

10  allegations of staff misconduct to the criteria used in the review process. Disclosure

11  could interfere with staff's ability to control violent disturbances with minimal use of

12  force. Disclosure would interfere with staff morale, making it difficult to hire qualified

13  staff. This is true even is the documents are released pursuant to a protective order.

14    **C.    Analysis**

15    As nited above, the Ninth Circuit has not recognized the self-critical analysis

16  privilege, Union Pac. R.R. Co., 219 F.3d at 1076 n. 7, and the deliberative process

17  privilege is inapplicable to the type of internal investigatory documents discussed here,

18  Soto, 162 F.R.D. at 612. Accordingly, the issue here is whether the documents may be

19  withheld under the official information privilege.

20    The Court has weighed the potential benefits of disclosure against the potential

21  disadvantages, Sanchez, 936 F.2d at 1033–34, and concludes that the balance tips

22  rather clearly in favor of disclosure. The Court is sensitive to Defendants' need to

23  maintain institutional safety and security. Similarly, the Court appreciates the benefit to

24  society and institutions within it when thorough and accurate investigations into alleged

25  wrondoing are promoted.  However, these records contain highly relevant information

26  bearing directly on the incident at issue and potential liability. Contrary to earlier

27  representations, the records contain reports of internal inquiries into the incident and

28

1    the level of force used, and opinions and determinations as to whether particular

2    exercises of force were or were not appropriate and in accordance with policy. These

3    records include differing views of the propriety of the actions during the event than

4    those reflected in the position taken by Defendants in this case. Justice would be

5    poorly served if their contents were not made available for use in questioning, and

6    possibly impeaching, lay and expert witnesses at the trial of this case.

7        Given the foregoing, judicial preference for admitting competent, relevant

8    evidence, and recognition that the balance is "moderately pre-weighted in favor of

9    disclosure" in these cases,  Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661),

10   the Court cannot justify withholding these records from Plaintiff on any basis proferred

11   by Defendants. Accordingly, Defendants will be ordered to produce to Plaintiff the

12   records listed as Items Nos. 1 and 4-7 in their supplemental privilege log, subject to the

13   limitations discussed below.

14   **IV.    PROTECTIVE ORDER**

15       Defendants requested the opportunity to seek a protective order prohibiting

16   Plaintiff from disclosing these confidential documents to others if produced to him. A

17   protective order is indeed warranted given the institutional concerns articulated by

18   Defendants. In light of the limited time remaining before trial, and the relatively

19   straightforward nature of Defendants' request, there is no need for Defendants to file a

20   separate motion seeking a protective order. The Court's Protective Order shall issue,

21   *sue sponte*, as follows:

22       Defendants shall produce the said material and Plaintiff may review it and use it

23   in litigating this matter subject to and strictly in accordance with following terms and

24   conditions:

25       1. The confidential documents may be submitted to the possession of the

26          following persons:

27

28

   a. The Litigation Coordinator at the institution where Plaintiff is now housed;

   b. Counsel for Plaintiff in this action, should Plaintiff acquire counsel;

   c. Paralegal, stenographic, clerical, and secretarial personnel regularly employed by counsel for Plaintiff;

   d. Court personnel and stenographic reporters engaged in such proceedings as are incidental to the preparation for trial or trial of this action;

   e. Any outside expert or consultant retained by Plaintiff's counsel for purposes of this action; and

   f. Non-inmate witnesses to whom the materials need be disclosed as necessary for preparation for trial and trial of this case, provided that each witness shall be informed of and agree in writing to be bound by the terms of this order, and shall not, in any event, be permitted to take or retain copies of the material .

2. Plaintiff will be allowed to review the confidential materials, but he may not copy them, retain them, or retain copies of them in his possession. The Litigation Coordinator at Plaintiff's institution shall allow Plaintiff up to 90 minutes to review the materials and to take notes. Plaintiff may not disclose the documents to, or discuss their content with, any other inmate, nor may any other inmate review or have possession of the materials or Plaintiff's notes.

3. All material produced hereunder in possession of the Litigation Coordinator shall be destroyed or returned to the Defendants' counsel no later than thirty days after trial of this matter.

4. Upon final judgment and resolution of any appeal, Plaintiff or his counsel shall return or destroy all such materials still in or subject to their possession

8

1    or control, and shall provide Defendants' counsel with sworn declarations

2    stating they have done so.

3    5. Confidential material obtained by Plaintiff or his counsel shall not be

4    disclosed, except as is necessary to the litigation of this case or its appeal,

5    and for no other purpose.

6    6. Any confidential material filed with the Court by either party shall be filed and

7    maintained under seal.

8    7. Any violation of this Protective Order may be punishable as Contempt of

9    Court and also may subject the violating party to litigations sanctions,

10    including dispositive sanctions, in the Court's discretion;

11    8. Nothing in this Protective Order is intended to prevent officials or employees

12    of the State of California, or other authorized government officials, from

13    having access to confidential material to which they would have access in

14    the normal course of their official duties.

15    9. The provisions of this Protective Order are without prejudice to the right of

16    any party:

17    a. To apply to the Court for a further protective order relating to this or

18    any confidential material or relating to discovery in this litigation;

19    b. To apply to the Court for an order removing the confidential material

20    designation from any documents;

21    c. To apply to the Court for an order modifying this Protective Order for

22    good cause shown; or

23    d. To object to a discovery request.

24    10. The provisions of this order shall remain in full force and effect until further

25    order of this Court.

26

27

28

9

1   **V.   ORDER**

2        Based on the foregoing, it is HEREBY ORDERED that, within ten days of this

3   order, Item Nos. 1 and 4-7 on Defendants' supplemental privilege log shall be

4   produced in accordance with the Protective Order, and kept in the care and custody of

5   the institution's Litigation Coordinator and Plaintiff's counsel, if any he has. The

6   Litigation Coordinator shall make arrangements for Plaintiff to have 90 minutes to

7   review the materials. Plaintiff may take notes, but no copy of the materials shall be

8   provided to Plaintiff.

9

10  IT IS SO ORDERED.

11      Dated:   __July 2, 2015__                    /s/ *Michael J. Seng*

12                                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28